Case number 20-6141 Memphis A Phillip Randolph Institute et al versus Tre Hargett et al. Oral argument is not to exceed 15 minutes per side. Mr. Cloutier for the appellants. You may proceed. Thank you your honor. Good morning your honors and may I please the court. My name is Matt Cloutier and I'm here on behalf of the state of Tennessee. With the court's permission I'll be reserving two minutes for rebuttal. That's fine thanks. Thank you your honor. The United States Constitution grants the state's broad authority to regulate their elections. Exercising that authority Tennessee enacted a statute that requires first-time voters registered to vote by mail to appear in person and present proof of identification the first time that they vote. This statute works in conjunction with many of Tennessee's other election laws to further the state's compelling interest in election integrity. But despite that compelling interest and despite the broad authority granted by the constitution the district court below issued a preliminary injunction barring the state from enforcing this statute on the eve of the November election. This court should reverse the district court and should vacate that injunction for two main reasons. First his plaintiffs claims are non-justiciable and second because the district court misapplied the governing legal framework. Beginning with justiciability article three of the constitution limits federal courts to deciding only in case only cases and controversies. Now this bedrock requirement means that plaintiffs have to show standing and it means that their claims cannot be moot. And I'll start with standing and note that federal courts are powerless to grant an injunction unless a plaintiff demonstrates a substantial likelihood of establishing standing. And to carry that burden of course the plaintiff has to prove three things. They have to prove an injury in fact that is fairly traceable to the conduct of the defendants and redressable by a favorable decision. And the supreme court reiterated these core requirements just last week in Carnegie Adams and reiterated the importance of showing a demonstrated concrete interest in this in the outcome of the case. And an organizational plaintiff that seeks to do this short of alleging direct harm has to do it by identifying a particular individual member who has suffered these sufficient injury to show standing to the court. And at the preliminary injunction stage an organizational plaintiff has to go beyond the allegations in the complaint and introduce factual evidence that if credited would establish their standing to seek the requested relief. But the district court's decision here. Look Jay can I ask you a question about I think one of your two arguments which maybe you put in the mootness category but that's with respect to Mr. Sweet being ineligible to vote absentee at the time of the general election. I think that's I think that's one of your arguments. Do you classify that as a mootness argument or a standing argument or both? We would classify it as a mootness argument your honor. Why not standing? I think because standing is of course as this court has recognized assessed when the complaint is filed. And here at the time. Is the Supreme Court ever talked about that issue? I believe so your honor. What's the Supreme Court said? My understanding is that the Supreme Court does again like this court look at when the complaint is filed to determine whether or not standing exists. I think if this court wants to. Is that what Perry versus Hollingsworth says? I'm not sure your honor. I think my understanding is in Lyons and in. Lujan, the Supreme Court has endorsed that approach, maybe not explicitly, but I think that's implied in their in their way that they typically look at standing. But I think I think in any event, whether this court looks at it as a standing issue or a mootness issue, I think it reinforces the conclusion that plaintiffs here have no justiciable claim. And I think because even if even if Mr. Sweet was eligible to vote absentee at the time that the amended complaint was filed by the time that the injunction issued, he was not. And that's because he was only eligible to vote absentee when the complaint was filed by virtue of a state court injunction that expanded absentee voting eligibility to encompass anyone who feared contracting COVID at a polling place. But that injunction, of course, was vacated by the Tennessee Supreme Court before the district court issued its injunction here. Um, so you're claiming that that goes to the question of mootness, right? I am, Your Honor. Would we judge mootness in part by looking at the associational claims as opposed to simply whether Mr. Sweet was eligible at the time of the election? I think our position, Your Honor, is that those can't really be separated because because Mr. Sweet was the only basis of the association standing here, they didn't identify any other member with standing and the district court's decision hinged solely on the alleged injury to Mr. Sweet. But you're moving back to standing. Does that apply to mootness as well? We think it does apply to mootness, Your Honor. Why wouldn't, for instance, capable of repetition yet evading review apply to mootness? That exception certainly can apply in the mootness context, Your Honor. But I think it's important to remember that the plaintiffs bear a heavy burden of showing that that exception does apply. And here, you know, barring a scenario where Mr. Sweet is rendered eligible to vote absentee by another state court injunction expanding absentee voting eligibility, I don't see how we get to a similar scenario that we have here, which is again required in that acceptance context. Because the plaintiffs say you say that the Mr. Sweet and the plaintiffs have the burden of showing mootness doesn't apply. We're in the preliminary injunction context where a preliminary injunction was granted to them. Don't you have the burden of showing that it's moot at this point in time? We would have the burden of showing that it's moot, Your Honor. But I think if we've made that showing, then the burden would shift to them to demonstrate that that exception would apply. And I think our position here is that it is moot because again, Mr. Sweet was the sole jurisdictional hook for the NAACP to bring its claim in federal court here, because they again alleged no other identified member who had suffered a cognizable injury. How do you interpret the Cleveland NAACP versus the city of Parma case in this regard? Your Honor, I don't think we find that case to be controlling here. And I think we'd ask this court to take that approach for two reasons. The first is that Cleveland branch is distinguishable on its facts. I think like this case, that one did involve a scenario where an organizational plaintiff's standing hinged on that of a single identified member. But really that's where the similarities between this case and that one end. Because in that case, the individual wasn't actually a member when the complaint there was filed and did have standing at that time. And beyond that, this court recognized that he maintained a continued interest in the outcome of the case, even though he didn't express a concrete interest at the time the injunction was issued in employment with the city of Parma. But that's clearly distinguishable from the situation here, where again, there's no evidence in the record showing that Sweet was a member of the NAACP when the amended complaint was filed. That's going back to standing. And I was asking you about the case on mootness. That is, Your Honor. I apologize. I think the broader point to make in the mootness context, though, is that Mr. Sweet, because he's no longer eligible to vote absentee and wasn't eligible to vote absentee when the injunction was issued, didn't have a favorable decision from the court. Do you know if Mr. Sweet did indeed vote in person in the November election? I do not, Your Honor. The record doesn't reflect whether Mr. Sweet voted either in person or absentee via the district court's injunction below. But if I can quickly return to Cleveland Branch, I think the broader point to make about why that case shouldn't control here is that as this court recognized just last year in Wright v. Spaulding, not everything in an opinion of this court is going to be binding on future panels. And one of the points this court made in Wright v. Spaulding is when you're looking at whether or not something is going to be binding on future panels of the court, you have to see that from the record, quote, it must be clear that the court considered the issue and consciously reached a conclusion about it. And I think Cleveland Branch certainly engaged with standing and did engage with mootness with respect to whether the defendant's voluntary conduct resulted in mootness. The majority discussion didn't really address whether the individual's change in position could result in mootness of the claim. And Judge Boggs in dissent made that exact point and noted that the majority had not addressed that. So for that reason, even if plaintiffs are correct that Cleveland Branch implies that an organizational plaintiff can carry on in its pursuit of a claim after the mootness of its individual member's claim, that implication wouldn't be a holding that's binding on this today. I think in the absence of that controlling authority, we would ask this court to adopt an approach, an interpretation of mootness that is more easily squared with this court's past precedents and the precedents of the Supreme Court, which again do require a showing of a concrete interest. And I think really the bottom line here is that federal courts are courts of limited jurisdiction, but the plaintiffs have asked this court to bend the well-settled rules of standing and mootness to enable them to bring their claims. But we would ask this court to reject that effort and to, again, find that the district court erred by issuing the injunction because plaintiffs' claims were non-justiciable, either because they lacked standing or because their claims were moot or both. Did you raise the mootness question at the district court level? I believe we mentioned it in passing, Your Honor, in a reply, I think in support of our motion to dismiss, because the plaintiffs had... Did the district judge talk about mootness? Not to any significant degree in his If we thought that there was some issue on mootness, would an approach be to remand with instructions to the district court to consider mootness? I think we would say that because the case, given our argument, was moot at the time the injunction issued, we would ask that this court reverse and vacate the injunction on that ground. So should we resolve the mootness question at the time that the injunction was issued or as of now? I think the court could certainly do either, though I think our position would be that the injunction... That Sweet's claims, and then again, I think by extension, the NAACP's claims were moot when the injunction issued because he was no longer eligible to vote absentee at that time. I think that's the cleanest resolution of the justiciability question, and again, should merit reversal of the district court's injunction. So this does raise an interesting question. The preliminary injunction was issued before the election, obviously. The election has happened. How does this impact any of your arguments? You reached out before the election as well. Of course, and I think I'd like to address that, I think, in two parts. I think first, we would say that we don't think that the case overall is moot, and certainly we don't think that the appeal is moot, and I think that's because neither plaintiff's request for injunctive relief nor the district court's injunction were limited in scope to the November election. I think the district court's injunction is open-ended and doesn't specify any particular duration or any limited election that it might apply to, and obviously, the plaintiffs aren't seeking solely a preliminary injunction. They are seeking broader permanent relief here. I think for those reasons, we would argue that this appeal remains live, I think, because a favorable ruling on standing or mootness could directly impact the continued vitality of the case. I think the district court is not able to raise a viable challenge to this statutory requirement if we are to throw out this case on mootness grounds. I mean, I think, Your Honor, the way that they could do that is by introducing more members with standing. I think that's the risk associated with identifying only— But won't there—the people have registered to vote by mail. You need to have somebody who registered to vote by mail at the time of the beginning of the lawsuit for there to be standing, but then the election has occurred, and so, presumably, they voted, and so, with respect to them, it's a done deal. So, I just don't understand how legitimate voters with real concerns can raise a challenge to this provision if you're correct on mootness. I think, Your Honor, I mean, again, I think alleging a collection of members that might have standing in the future, perhaps a member, for example, that wasn't eligible to vote in this election but would be eligible in the next or something like that to expand the sort of temporal scope of the lawsuit and thus avoid potential mootness problems in that way could be sufficient to enable the plaintiffs to pursue a claim even when this particular election has passed. And if I can just take a brief moment to conclude— Well, can I ask you one question about the merits? Of course. You didn't have a chance to talk about those at all. So, one, you know, just sitting back and look— 30 years. I think you mentioned it in your opening. One justification you might expect the state to make for the statute is that, you know, if someone registers by mail and never physically shows up anywhere to ever vote, there's a chance of fraud. No one's ever seen that person in person. They haven't seen their signature in person. Lots of things that we traditionally do to verify voters, at least once. But your friend on the other side says that you didn't raise that kind of argument in the district court. And I was just wondering if you agree with her or if you disagree, why? I see my time has run. May I have permission to respond? Please do. Thank you, Your Honor. I think the two ways I'd respond to that are, first, that I do think we raised it in the district court. I think the plaintiff's main response is that we raised it, I think, obliquely, is the term that they use. But I think, tellingly, they don't cite to any authority suggesting that oblique presentation of an interest undermines its constitutional significance. And I think it wouldn't really make any sense for that authority to exist, given that, of course, it's the plaintiff's— Where are your— what are your oblique— just give me a couple of the record sites, or is it cases you're relying on? Because a lot of cases— We cited a couple of cases. I apologize. I don't have the names of them in front of me, but they are cited in our briefing in the district court from— The district court said that you didn't raise fraud. So it's important that we know why you think the district judge is wrong and is reversibly wrong on that point. Yes, Your Honor. I understand. I think we did, though, reference throughout our brief, both in respect to this particular law and the other challenged election laws, that they do further the state's compelling interest in election integrity and fraud protection. And I think another thing to note is that we introduced the Declaration of the State's Coordinator of Elections, in which he expressly identified the importance of these sort of provisions in ensuring the state's interest in election integrity, and warned of the sort of ghost voting that Judge Radler just referenced in his question. However, the district judge said—and I believe that there was a basis for the district judge saying this, but he's not frivolous—he said that you raised only two federal statutes, one of which being the Help America Vote Act, which you're continuing to rely on, and the other one, the NVRA, which you are no longer relying on, and that those were the only reasons, he said, that you had raised to support your position in the district court. He did say that, Your Honor. And again, I think our position is, of course, that that was erroneous, because, as I've noted, we did raise this throughout our briefing below. I think, if I may quickly just add one point about the merits before I conclude, I think it's important to remember that we're talking about two related errors here in the district court's decision. It note that we had raised anything about election integrity, but it's a two-part error, because they also failed to properly weigh the burden here. So it was both an overestimation of the burden and an underestimation of the value of the state. Can I go back to the point we were just discussing that you and Judge Moore and I had discussed? Am I right that there are multiple aspects of Tennessee law in question, and so some of the evidentiary submissions went to—one evidentiary hearing just dedicated to this provision of Tennessee law as opposed to the other one, for example, the one we had before? In other words, I know there was a lot of cumulative evidence presented. I don't know if the issue is sort of the other side saying you didn't tie a piece of evidence that was submitted maybe somewhere else to this statute particularly, or was there one mass hearing? I'm just kind of not sure how everything broke down in the district court. Certainly, Your Honor. There were no preliminary injunction hearings in this case. So it was all decided on the briefing, I think, given the expedited nature of the case. And I do take that to be a plaintiff's complaint that we didn't tie the argument specifically to this provision. But again, I think that the assertion of the state's interest in election integrity was made pervasively through our lower court briefing. And I think for all of these reasons, we've asked that this court reverse the district court. Thank you. Thank you. Ms. Lange? Good morning, Your Honors, and may it please the court. My name is Danielle Lange, and I represent Appellees and Chatter. This case overall is about whether a state can require the particular narrow categories of voters that itself has identified as having little to no opportunity to vote in person to do precisely that, simply because they are voting for the first time, and to do so without proffering any evidence that such a requirement furthers the state interest. And it cannot. But this appeal is far narrower than that. The appeal only asks this court to determine whether the district court abused its discretion in issuing the preliminary injunction of the first-time voter restriction based on the record and the arguments that were before it at the time, and amid a global, ongoing pandemic. It did not. As the state itself has recognized, the COVID-19 pandemic, and this is a quote, has upended nearly every facet of American life, and elections are no exception. And the district court certainly did not clearly err in considering the burdens created by COVID-19 in considering the burdens of the restriction. What about the fact that Mr. Sweet was not just a first-time voter who had, who didn't want to appear in person, but what about the Fisher v. Hargett ruling, and the fact that he wasn't able to, he wasn't eligible to vote absentee under any circumstances? At the time that the complaint was filed, he was eligible to vote absent. But at the time, at the time, Judge Richardson issued the order on this particular issue, he was not, correct? He may not have been, and the question there is complicated. Is there any indication in the record that he was? No, not at the time, Your Honor, because the difficulty there is that as you approach an implementation, and that was in September, you have until late October to apply for an absentee ballot. And of course, a number of the absentee eligibility criteria that exist are change around in nature. He was kind of deciding where he was going to go to school, and so where he was going to be was in question, whether or not, quite frankly, any of us were either ill or quarantined because of COVID-19 exposure was a question we could not know in September, as of November. And in fact, one of his... I mean, we don't usually grant relief for harms that we don't know about. Another way of saying that is that your client had to have standing throughout this proceeding. I think that's what Hollingsworth v. Perry says, tell me if you think that's wrong. And I think one of the points Judge Gibbons might be making is that if there was standing initially, that standing may have been lost by operation of the state Supreme Court ruling. So a couple of points there, Your Honor. With respect to Hollingsworth, Hollingsworth was really about standing to appeal. And if you look at Lujan, Lujan is exceptionally clear. It says jurisdiction is to be assessed under the facts existing when the complaint is filed. Of course, there is a separate entire jurisprudence around mootness, which is often called standing set in time. And we have a separate set of jurisdictional questions when it comes to mootness. So I think if we separate as the defendant's conceited is correct, standing and mootness, it's plain that Mr. Sweet had standing at the time of the Why would a federal court issue relief to a party that doesn't have any injury? I believe that there are several reasons for this, Your Honor. One is that the organizational plaintiffs here clearly had an ongoing injury. The question is whether or not they have this rotating, revolving door issue when it comes to individual members. And that's what Cleveland NAACP was trying to address when it said that just because one member loses their concrete interest doesn't mean that the organization that's representing a much larger, in this case, electorate group of voters that are their members has lost interest. And in fact, Tennessee NAACP and all the other organizational plaintiffs have certainly not lost an interest. As Mr. Sweet perhaps became ineligible, other voters that they were working with. Aren't you required to identify those voters? And we certainly will as we move forward, Your Honor. So now you're asking us to grant relief for a case of unknown voters for unknown injuries? No, Your Honor, absolutely not. Wouldn't the proper response, if you want to identify more people, is for us to do whatever disposition we would make based on the fact that Mr. Sweet no longer is the proper person through which to establish associational standing and then for you to move to substitute those other individuals in the district court? Your Honor, the question here is whether or not the discretion at the time that the injunction was granted, the time that the preliminary injunction was briefed, Mr. Sweet had standing and he put that forward. There was more than a month between the August 5th decision of the Tennessee Supreme Court and the date on which Judge Richardson ruled on this particular aspect of the case, right? That's true, Your Honor. So once again, we have to separate the questions of standing and mootness. When it comes to standing, there's no question Mr. Sweet had standing. When it comes to mootness, this court has been exceptionally clear and I think that there are three separate reasons why mootness should not apply, but let's start with the easiest one, which is capable of repetition yet evading review. This court has been exceptionally clear that election cases are the quintessential application of the capable of repetition yet evading review and this is what Judge Moore was getting at in her questioning, I believe, of the state when she said, in fact, now that we did win a preliminary injunction, presumably all the voters that were affected in November, you know, voted and are no longer first-time voters, they would all become moot and you have this constant revolving door. Is Mr. Sweet in that group of people who voted in November? Your Honor, since we have not done future further record development in this case because it's been stalled during this appeal, I cannot represent you for sure, but I'm certain he is, but I can't represent to you for sure, Your Honor, and not something that would certainly be developed going forward, but that's why the capable of repetition yet evading review doctrine plainly applies and is the easiest way to address this case and the state has really not addressed the fact that the court has said that the second prong about whether or not it would apply to the plaintiff in particular, recur to the plaintiff in particular, simply does not apply to election law cases and that's something that not only this circuit has held, but that also the Supreme Court has held. If you look at Anderson itself was a capable of repetition yet evading review case and it's Lawrence v. Blackwell in the Sixth Circuit that held that that part of the capable of repetition yet evading review doctrine does not apply, but of course it's also very possible that this would likely recur to Mr. Sweet. Mr. Sweet moves to another county, re-registers, and is going to be out of town when an election happens, but certainly capable of repetition yet evading review and it's certainly capable of repetition yet evading review for all of the other organizational members. Can I ask you one other question about standing? There's an issue about whether he was even a member of the NAACP and I guess your best evidence is that a declaration was submitted eventually in the litigation that he is a member. Why doesn't the declaration say that he was a member as of the time that the case was filed? Well, your honor, I think at the time he was putting forward the facts, but he thought he needed to put forward. He said, I'm a member. There was no question. It wasn't a deposition where he could kind of go back and early on. Early on, he said he attended events. He didn't say he was a member until sometime down the road when both he and his grandmother apparently said he was a member, right? That's correct, your honor, and you know, inartful drafting of declarations in the midst of, you know, hurried litigation and clients that don't necessarily understand the kind of specifics of, you know, constitutional doctrine, but he is the grandson of the president of the Tennessee NAACP. There's no question as to his membership in the record and it's much ado about nothing. If the state had a question about his membership, they could have sought to strike this declaration. They could have sought a deposition. They could have sought a preliminary injunction hearing. Judge Riedler, you asked earlier whether or not there was a preliminary injunction hearing. There wasn't one because the state did not request one. They did not think that there were any factual issues here and they weren't concerned about the facts. On the question of whether Sweet was a member, did the district judge say for purposes of the preliminary injunction that he found that there was enough in the record to support that Sweet was a member? And is that something that we review for clear error as a factual determination by the district judge? Yes, Your Honor. Absolutely. He quite extensively, I mean, I think one of the strengths of the opinion below is that the district court was intensely familiar with the record, parsed it very closely, and made a very specific factual finding based on the evidence that was put before him as to Mr. Sweet's membership. And so that would be reviewed for clear error. Yes, Your Honor. And when it goes to the state's lack of interest in developing the facts here, I think that goes to the merits as well. And there were a number of questions at the end of opposing counsel's argument about what arguments were presented to the court. And quite frankly, this is not a question of cumulative evidence or lack of clarity in the record about what evidence went to where there is a brief opposing the preliminary injunction is broken down quite clearly by the state. I mean, there's quite a bit of one of the questions I was asking is quite a bit of evidence, there's declarations and other things submitted in the record that could go to various statutes that are at issue that was submitted to the district court. That's true, Your Honor, although I would argue that I'm not sure that they could go to different claims. Most of the declarations were specifically aimed at the signature match claim and talked about the various processes that the individual counties had or whatnot. There is, you know, the one declaration from election administrator coins is the only thing the state relies upon. But that is clearly discussing and at length, the signature match policies. And so once again, does not ever, at any point reference the first time voter requirement. And of course, the Anderson verdict test requires at least some connection between any asserted interest and the actual restriction in question. And there is no declaration that ties those two together whatsoever, anywhere. And, you know, even though the district court found that the state clearly have not raised any issue of fraud, there's two pages and a 57 page brief developed to the merits on the while they did submit, submit substantial evidence when it comes to signature matching and the absentee ballot restriction. The state actually did consider the fraud argument and said question to a different part of the analysis. In 2018, would you have viewed this burden that the statute placed on a Tennessee voter as minimal? No, Your Honor. Although that's clearly not the question that's before this court. I think it's sort of a hypothetical. But what's what's the burden in 2018 at this? This? What's the more than minimal burden in 2018 that this statute created on a voter? Well, this restriction only applies to folks who are otherwise eligible to vote absentee. And importantly, the state has said that it has identified the interest or that its eligibility criteria is specifically focused on those who would be unable to vote in person. So by the state's own admissions, it says, we've created these criteria that are only for people who can't vote in person, and then says, but even though we've just already said that we don't believe you can vote in person, you still have to vote in person if it's the first time voting. And of course, do you agree there's no constitutional right to vote absentee? There's no constitutional right to vote absentee. What there is is a constitutional right to vote. And what this court has said in Mays v. LaRose, and in several other cases, is that you have to look at all opportunities to vote when considering that for the affected class of voters. So when you're identifying voters that have been identified... So this voter in 2018 could have gone early, in 2020 also, but 2018 could have gone early, could have voted on election day. There were options. Well, that's the precise question is that most voters, that's true. But for absentee voters, that's a very limited category in Tennessee. And it's elderly folks who can't really get around, whether it be early or not. It is students. That's a quintessential example, right? You turn 18, you're at college, you've registered to vote, you are out of your county the entire early voting period. There's no constitutional right for them to vote absentee. There's a constitutional right for them to have an opportunity to vote, and in Mays v. LaRose... Okay, so correct. And my thought would be that there are lots of ways they can vote. But I think your argument is basically the pandemic is like an overlay that we should then... You have this voting regime, and then you have the pandemic. And the question I had is the state isn't the pandemic. So the state is not doing anything other than what it's done for 25 years to limit the right to vote, you would say. And we have said, I think in Thompson, that state is still allowed to keep its election rules, even in a time of pandemic. The Seventh Circuit has said the same thing. What's your response to that? Each of those cases was very fact specific and still applied the Anderson verdict analysis and determined whether or not the burden was too high. And Anderson verdict by its nature is a fact specific analysis that has to take into account the realities in the world in addition to the state's own regime. And so that's obvious in a case like Obama for America, where the court considered the positions of various voters and what circumstances they might be facing. Those are things that the state, of course, doesn't control, but they're still part of the fact specific analysis of Anderson verdict. I see that my time has expired. If you'd like to conclude, I know we took your opponent way over his time. So if you'd like to conclude that would be fine. Thank you, Your Honor. So I would conclude by saying that it would violate both the Supreme Court and Sixth Circuit precedent to find that there was a lack of time that the preliminary injunction was granted. Mr. Sweet, it was not clear error to find that he had standing at the time that the complaint was filed. The capable of repetition yet evading review doctrine plainly applies, as does Cleveland NAACP. It makes sense that organizations that represent many members retain their interest in the litigation, even after one individual member's mootness is not the same as standing. It is a heavy burden on the defendants to show mootness. And the Supreme Court has been very clear that an interest that would not be sufficient at the time of a complaint being filed is not the same as the lack of interest or the amount of interest necessary to escape mootness. For example, the voluntary cessation doctrine is a perfect example of that. And on the merits, you cannot find that the district court plainly aired clear abuses discretion or clearly aired. The district court considered the facts that were before it and the very limited record evidence before it. The state didn't provide anything to connect the second and third prongs here, which have to do with state interests and tying those state to the requirement. It's important to remember here, it is not the case that these voters did not have to provide identification. Indeed, they were required after this injunction to provide identification through the mail as the Help America Vote Act requires. For online registrants, they had already done that through the DMV at a prior time. And yet this restriction was being the text of the statute. And for those reasons, the state did not abuse its discretion in granting a preliminary injunction, the state will have plenty of opportunities to make its merits arguments below as this case moves forward. Thank you. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. All right. With my very limited time, I think I just want to focus on which I didn't get to cover as much in my previous time speaking to the court. I think as the question elicited during my friend on the other side's arguments, I think we do, we do, of course, need to look at standing at the time the amended complaint was filed. And here, a close look at the record confirms that there is no record evidence showing that Sweet was a member on the day the amended complaint was filed. As you... Well, Judge Moore is correct, isn't she? That the finding that he was a member for purposes of the preliminary injunction is reviewed under the clearly erroneous standard. It's a factual finding, right? I think that's correct, Your Honor. And I think we would argue that it was clear error here. I think as this court has recognized, you can have clear error even when there is some evidentiary support for a decision. But here, of course, there's none. I think as you decide that somebody is or isn't a member, the declaration said he attended meetings, right? It did, Your Honor. Couldn't that be interpreted reasonably to mean that he's a member? If there's an inference that's being drawn, certainly. There is, Your Honor. And I think our position is that the inference isn't enough. Because as I pointed out, and as this court recognized in footnote three of its opinion in Waskill, at the preliminary injunction stage, a plaintiff has to show actual evidence in the record confirming that an individual has standing. And here, that simply wasn't something the plaintiffs did. As Judge Gibbons pointed out, and as you just noted in your question, the only record evidence of Sweet's standing at the time the injunction issued was that he occasionally attends events. And only after the injunction was there any additional evidence put forth. And even that, as Judge Radler noted, only noted that he is a member in the present tense. And I think all of this indicates that there was no evidence whatsoever in the record showing Sweet's membership on the date the amended complaint was filed. And for that reason, as well as the others articulated in our briefing, we ask that this court prefers. Thank you. Thank you. Thank you both for your argument. And the case will be submitted.